# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GALEN EUGENE GILLIS,** | : | Civil No. 1:16-CV-2067 |
| | : | |
| Plaintiff | : | (Chief Judge Conner) |
| | : | |
| v. | : | (Magistrate Judge Carlson) |
| | : | |
| **HARRISBURG EDUCATION** | : | |
| **ASSOCIATION, et al.,** | : | |
| | : | |
| Defendants | : | |

## REPORT AND RECOMMENDATION

**I.    Statement of Facts and of The Case**

This case is an employment discrimination lawsuit brought by Galen Gillis, a social worker employed at the Harrisburg School District, and who is acting as his own counsel in this lawsuit. In its current form, Gillis' lawsuit makes some unusual choices regarding claims and parties. The gist of Gillis' complaint seems to be that the school district engaged in racially discriminatory furloughs of the plaintiff and other social workers in the Fall of 2013. Yet, while this alleged racial discrimination by the school district lies at the heart of Gillis' complaint, Gillis has not sued the school district, his employer. Instead, Gillis has elected to sue the unions that represented him, the Harrisburg Education Association and the Pennsylvania State Education Association. (Doc. 1.) Gillis sues these unions,

alleging that they denied African American unlicensed social workers like the plaintiff who were furloughed by the school district in 2013 "our duty of fair representation because of our race." (*Id.*, at 37.) Gillis levels this charge against these labor organizations even though the exhibits which he attaches to this complaint reflect that just the opposite took place, and seem to reveal zealous advocacy by the union on behalf of these employees, many of whom—including the plaintiff—have now been reinstated to staff positions with the school district.

On these facts, the defendants have moved to dismiss Gillis' complaint. (Doc. 7.) This motion is fully briefed by the parties, (Docs. 8 and 9.), and is, therefore, ripe for resolution. For the reasons set forth below, it is recommended that the motion to dismiss be granted, and that Gillis' complaint be dismissed without prejudice to the plaintiff endeavoring to file an amended complaint which properly states a claim upon which relief may be granted.

In its present form, Gillis' complaint, which intersperses factual narrative with various documentary exhibits, demands a great deal of the reader. However, liberally construed the complaint alleges the following facts: In 2013 Galen Gillis was employed as an unlicensed and uncertified social worker by the Harrisburg School District. (Doc. 1.) In August of 2013, the Harrisburg School District furloughed Gillis and a number of other social workers[1] from their positions with

---

[1] The precise number of these furloughed social workers is unclear. For his part,

the school. (*Id.*, at 8, 9, 13.) According to Gillis, at that time, the District informed him that his furlough was "a result of restructuring and in accordance with the 2013-2014 budget." (*Id.*, at 9.) Gillis' complaint rejects this rationale, and asserts in a conclusory fashion that the school district's actions represented racial discrimination. Yet, while he has leveled this accusation against the school district, Gillis has not named the District as a defendant in this action. (*Id.*, at 8.)

Instead, Gillis sued the labor unions which represented him asserting his "belief [that] HEA and PSEA racially discriminated against us and denied us of our duty of fair representation because our race." (*Id.*, at 37.) The difficulty with this assertion is that it is unsupported by any well-pleaded facts beyond Gillis' subjective impression, and is actually contradicted by many of the well-pleaded facts which Gills alleges in his complaint. For example, following his receipt of this furlough notice, Gillis states that he communicated to the union his concern "that I have more seniority and was furloughed instead of the less senior licensed

---

Gillis maintains that three other social workers were also furloughed at that time. The arbitration award issued in response to a grievance litigated by the union on Gillis' behalf, a copy of which is attached to the complaint, alludes to at least six social workers who were furloughed. (*Id.*, at 26.) What seems undisputed, however, is the fact the defendant unions pursued grievance arbitration on behalf of Gillis and all other similarly situated workers for more than a year, a fact which is completely inconsistent with Gillis' claim that the defendants engaged in a discriminatory failure to fulfill their duty of fair representation.

social workers." (*Id*., at 14, 15.)  Gillis alleges that the union promptly acted upon his concerns and those of the other similarly situated furloughed school social workers, by filing a class action grievance on behalf of all furloughed school social workers on October 18, 2013.  (*Id*., at 14, 17.)  This grievance advanced precisely the concern which Gillis had articulated top the union; namely, an allegation that: "The District reinstated less senior social workers and more senior ones are still on furlough." (*Id*., at 17.)

Gillis further alleges that the union actively litigated this grievance over the ensuing year, pursuing the grievance to arbitration, and a hearing was held on Gillis' grievance on December 2, 2014.  (*Id.*, at 14.)  Following this hearing the arbitrator found in favor of the school district under the collective bargaining agreement, concluding that the District restructured its program at the same time it furloughed the employees, which resulted in the three licensed social workers being moved to newly created positions that required licensure.  (*Id*. at 26-27.)  As for the unlicensed and uncertified social workers, a class that included Mr. Gillis, the District then recalled the most senior of the unlicensed furloughed social workers, Ms. Saundra Goodrum, to the single open position that did not require licensure. (*Id.*, at 8.)

Given the well-pleaded facts in Gillis' complaint, which reflected active representation of Gillis and his colleagues by the union, Gillis' Title VII

4

discriminatory failure to fulfill the duty or representation claim now rests upon a number of complaints Gillis has regarding the manner in which the union litigated this grievance, as well as the union's decision to not pursue an appeal of the arbitrator's decision, since the expense of the appeal would have been cost prohibitive.  Thus, in his complaint Gillis disagrees with the unions' decision to acknowledge that three licensed school social workers had been furloughed; disputes the union's decision at arbitration to stipulate to several facts, thereby obviating the need for Gillis' testimony; and contests the union's decision not to appeal the arbitrator's decision.  Gillis then alleges without the benefit of any further well-pleaded facts that all of these actions taken on behalf of himself and other similarly situated social workers by the union during this grievance arbitration process reflected a secret racially discriminatory collaboration between the unions and the school district.  While Gillis makes these sweeping claims, it also appears undisputed that both Gillis and another of the three school social workers who had remained on furlough as of the start of the 2013-2014 school year were brought back to work by the start of the 2014-2015 school year.  (*Id.*, at 20.)

It is against the background of these well-pleaded facts, facts which underscore the union's advocacy on behalf of Gillis and others similarly-situated, that we assess whether Gillis' *pro se* complaint states a plausible claim for racially motivated discrimination through a failure by the union to fairly represent the

5

interests of these workers. Finding that Gillis' complaint, in its present form, does not adequately state a claim upon which relief may be granted, we recommend that the complaint be dismissed, but that Gillis be given leave to endeavor to amend his complaint to state a claim upon which relief may be granted.

## II. Discussion

### A. Motion to Dismiss—Standard of Review

A motion to dismiss tests the legal sufficiency of a complaint. It is proper for the court to dismiss a complaint in accordance with Rule 12(b) (6) of the Federal Rules of Civil Procedure only if the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b) (6). When reviewing a motion to dismiss, the court "must accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff, and ultimately determine whether plaintiff may be entitled to relief under any reasonable reading of the complaint." *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010). In reviewing a motion to dismiss, a court must "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the [plaintiff's] claims are based upon these documents." *Id.* at 230.

In deciding whether a complaint fails to state a claim upon which relief can be granted, the court is required to accept as true all factual allegations in the complaint as well as all reasonable inferences that can be drawn from the complaint. *Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.*, 20 F.3d 1250, 1261 (3d Cir. 1994). These allegations and inferences are to be construed in the light most favorable to the plaintiff. *Id.* However, the court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). Further, it is not proper to "assume that [the plaintiff] can prove facts that [he] has not alleged. . ." *Associated Gen. Contractors of Cal. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Following the rule announced in *Ashcroft v. Iqbal,* "a pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rather, a complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. *Id.* To determine the sufficiency of a complaint under the pleading regime established by the Supreme Court, the court must engage in a three step analysis:

> First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should

> identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 675, 679). "In other words, a complaint must do more than allege the plaintiff's entitlement to relief" and instead must "'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

As the court of appeals has observed: "The Supreme Court in *Twombly* set forth the 'plausibility' standard for overcoming a motion to dismiss and refined this approach in Iqbal. The plausibility standard requires the complaint to allege 'enough facts to state a claim to relief that is plausible on its face.' *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955. A complaint satisfies the plausibility standard when the factual pleadings 'allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955). This standard requires showing 'more than a sheer possibility that a defendant has acted unlawfully.' Id. A complaint which pleads facts 'merely consistent with' a defendant's liability, [ ] 'stops short of the line between possibility and plausibility of "entitlement of relief."'" *Burtch*

*v. Milberg Factors, Inc.*, 662 F.3d 212, 220-21 (3d Cir. 2011) *cert. denied*, 132 S. Ct. 1861, 182 L. Ed. 2d 644 (U.S. 2012).

In undertaking this task, the court generally relies only on the complaint, attached exhibits, and matters of public record. *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attached as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002); *see also, U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 382, 388 (3d Cir. 2002) (holding that "[a]lthough a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss in one for summary judgment.") However, the court may not rely on other parts of the record in determining a motion to dismiss. *Jordan v. Fox, Rothschild, O'Brien &Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

It is through this legal prism that we now must assess the discriminatory failure to fairly represent claim which the plaintiff lodges against the defendant labor organizations to ascertain whether that complaint states sufficiently well-pleaded facts to sustain a claim upon which relief may be granted.

### B. Elements of a Title VII Duty of Fair Representation Claim

A plaintiff like Galen Gillis must meet exacting standards of pleading, and proof, to sustain a Title VII discriminatory failure of the duty of fair representation claim against a labor union. In order to state such a claim, Gillis must allege well-pleaded facts which, if proven, would satisfy the following three essential elements: "(1) a violation of the collective bargaining agreement with respect to the plaintiff; (2) the union permitted the violation to go unaddressed, thereby breaching its duty of fair representation; and (3) some indication that the union's actions were motivated by some discriminatory animus." *Danao v. ABM Janitorial Servs.*, 142 F. Supp. 3d 363, 371 (E.D. Pa. 2015). Further, "[a] breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith*." Ponton v. AFSCME,* 395 F. App'x 867, 875 (3d Cir. 2010). In the context of a failure to fairly represent claim brought by a union member against a labor organization arising out of the union's handling of a grievance, it is also clear

that the failure of the grievance does not equate to a failure of fair representation by the unions. Unions are permitted to make tactical judgments in the pursuit of grievances on behalf of their members, and a failure to fairly represent claim only arises in this setting if the plaintiff can plead facts which show both: (1) a fundamental dereliction of duty by the union; and (2) "that the Union Defendants' alleged dereliction 'damaged the grievance presentation.' *Findley v. Jones Motor Freight, Div. Allegheny Corp.*, 639 F.2d 953, 959 (3d Cir.1981)." *Deans v. Kennedy House, Inc.*, 587 F. App'x 731, 736 (3d Cir. 2014).

Further, when we examine such claims we are also enjoined to consider the fact that:

> "[A] union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness' as to be irrational." *Id*. (quoting *Ford Motor Co. v. Huffman*, 345 U.S. 330, 338, 73 S.Ct. 681, 97 L.Ed. 1048 (1953)). When considering whether a union's actions fall within that range, courts "must be highly deferential, recognizing the wide latitude that negotiators need for the effective performance of their bargaining responsibilities." *Id*. at 78, 111 S.Ct. 1127. That standard "gives the union room to make discretionary decisions and choices, even if those judgments are ultimately wrong," and even if its errors in judgment may rise to the level of negligence. *Marquez v. Screen Actors Guild, Inc.*, 525 U.S. 33, 45–46, 119 S.Ct. 292, 142 L.Ed.2d 242 (1998); see also *United Steelworkers of Am. v. Rawson*, 495 U.S. 362, 372–73, 110 S.Ct. 1904, 109 L.Ed.2d 362 (1990) ("[M]ere negligence, even in the enforcement of a collective-bargaining agreement, would not state a claim for breach of the duty of fair representation."). Furthermore, when reviewing representation at a grievance hearing, courts must give "due regard for the fact that

11

> both the advocates and the tribunal members are laymen," not lawyers. *Findley v. Jones Motor Freight, Div. Allegheny Corp.*, 639 F.2d 953, 961 (3d Cir.1981); see also *Deans v. Kennedy House, Inc.,* 998 F.Supp.2d 393, 419 (E.D.Pa.2014). Thus, even if a plaintiff's allegations that the Union attorney failed to develop certain arguments are well-founded, they constitute mere disagreements over tactics and strategy, not a breach of the duty of fair representation. *DeFillippes v. Star Ledger*, 872 F.Supp. 138, 141 (D.N.J.1994).
>
> *Danao v. ABM Janitorial Servs.,* 142 F. Supp. 3d 363, 371–72 (E.D. Pa. 2015).

Moreover, a key element to a Title VII discriminatory failure to fairly represent claim are pleadings and proof which show that the union's failure to adequately represent a member was motivated by some discriminatory animus. See *Peden v. Dist. Council 33 Local 696,* No. 15-3425, 2016 WL 6211883, at *2 (3d Cir. Oct. 25, 2016). On this score, a union member's "speculation is not adequate to save his claim." *Id*. Rather, "[f]acts, not an employee's perceptions and feelings, are required to support a discrimination claim." *Id.*

### C. Gillis' Complaint Currently Fails to State a Claim Upon Which Relief May Be Granted

Judged against these precise legal guideposts, presently Gillis' complaint simply does not state a discriminatory failure of the duty of fair representation by the defendants unions. Indeed, in its current form, the complaint seems fatally flawed in at least four basic respects.

First, beyond his subjective impression that he was dealt with unfairly, Gills has not alleged any well-pleaded facts which tend to show a violation of the collective bargaining agreement by the school district in the course of this furlough decision-making process. Quite the contrary, the arbitrator's decision, excerpts of which Gillis included with his complaint, indicates that the district complied with the collective bargaining agreement in the actions which it took with respect to Gillis and other social workers in the Fall of 2013.

Second, Gillis has not shown that the unions allowed any alleged violation of the collective bargaining agreement to go unaddressed. Instead, Gillis has asserted well-pleaded facts which demonstrate that the unions' actively litigated grievances on behalf of Gills and other similarly situated union members, pursuing those grievances on behalf of its members for more than a year.

Third, in its current form Gillis' complaint does not allege well-pleaded facts which would allow us to premise a failure of the duty of representation claim upon the manner in which the union conducted this grievance litigation. On this score in order to survive a motion to dismiss Gillis must allege facts which show that the "union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Ponton v. AFSCME,* 395 F. App'x 867, 875 (3d Cir. 2010). "[A] union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far

outside a 'wide range of reasonableness' as to be irrational." *Danao v. ABM Janitorial Servs.,* 142 F. Supp. 3d 363, 371–72 (E.D. Pa. 2015). "Furthermore, when reviewing representation at a grievance hearing, courts must give 'due regard for the fact that both the advocates and the tribunal members are laymen,' not lawyers. *Findley v. Jones Motor Freight, Div. Allegheny Corp.*, 639 F.2d 953, 961 (3d Cir.1981); see also *Deans v. Kennedy House, Inc.,* 998 F.Supp.2d 393, 419 (E.D.Pa.2014). Thus, even if a plaintiff's allegations that the Union attorney failed to develop certain arguments are well-founded, they constitute mere disagreements over tactics and strategy, not a breach of the duty of fair representation. *DeFillippes v. Star Ledger*, 872 F.Supp. 138, 141 (D.N.J.1994)." *Danao v. ABM Janitorial Servs.,* 142 F. Supp. 3d 363, 371–72 (E.D. Pa. 2015). Considered through this this deferential standard of review, in this case Gillis simply has not alleged sufficient well-pleaded facts to show that the unions' behavior was so far outside a wide range of reasonableness as to be irrational. Rather, Gillis' factual averments constitute little more than mere disagreements over grievance arbitration tactics and strategy, disputes which as a matter of law do not rise to the level of a breach of the duty of fair representation.

Finally, Gillis has not met his threshold burden of asserting well pleaded facts which show that the unions' failure to adequately represent him was motivated by some discriminatory animus. See *Peden v. Dist. Council 33 Local*

14

*696,* No. 15-3425, 2016 WL 6211883, at *2 (3d Cir. Oct. 25, 2016). In fact, beyond asserting in conclusory terms his personal belief that every aspect of this grievance process revealed discriminatory bias, Gillis alleges no well-pleaded facts to support this essential element of his claim. Simply put, more is need here for Gillis to state a claim upon which relief may be granted since a union member's "speculation is not adequate to save his claim," and "[f[acts, not an employee's perceptions and feelings, are required to support a discrimination claim." *Peden v. Dist. Council 33 Local 696,* No. 15-3425, 2016 WL 6211883, at *2 (3d Cir. Oct. 25, 2016).

For his part, Gillis has responded to this motion to dismiss, in part by arguing that he either possesses or may acquire additional facts that would support his claims. (Doc. 9.) The difficulty with this argument, however, is that much of what Gillis now alludes to in his response to this motion to dismiss is not set forth in a well-pleaded fashion in his complaint. It is well-settled that a plaintiff cannot amend a complaint through the filing of a brief, or through arguments set forth in a brief opposing a dispositive motion. Indeed, "[i]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Pennsylvania ex rel. Zimmerman v. Pepsico, Inc.,* 836 F.2d 173, 181 (3d Cir. 1988) (quoting *Car Carriers, Inc. v. Ford Motor Co*., 745 F.2d 1101, 1107 (7th Cir. 1984)); cf. *Frederico v. Home Depot,* 507 F.3d 188, 202 (3d Cir. 2007) ("[W]e do

15

not consider after-the-fact allegations in determining the sufficiency of [a] complaint under Rules 9(b) and 12(b)(6).").

In short, we must judge the complaint as it is, and not as Gillis wishes it might be. In this case, when we undertake this analysis we find that the complaint, as currently drafted, fails to state a claim upon which relief may be granted, and should, therefore, be dismissed.

### D. The Complaint Should be Dismissed Without Prejudice

While we find that this complaint is subject to dismissal in its current form, we also recognize that *pro se* plaintiffs should be afforded an opportunity to amend a complaint before the complaint is dismissed with prejudice, *see Fletcher-Hardee Corp. v. Pote Concrete Contractors*, 482 F.3d 247, 253 (3d Cir. 2007), unless it is clear that granting further leave to amend would be futile, or result in undue delay. *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004). In this case, Gillis has not alleged facts that would state a claim upon which relief may be granted, and he may be unable to do so. Nonetheless, acting out of an abundance of caution, and in order to preserve the plaintiff's rights, it is recommended that this matter be dismissed without prejudice to Gillis attempting to amend this federal complaint to state a claim upon which relief may be granted in federal court, by including proper allegations that meet the requirements of federal law.

In this regard, we instruct the plaintiff that any "amended complaint must be complete in all respects. It must be a new pleading which stands by itself as an adequate complaint without reference to the complaint already filed." *Young v. Keohane*, 809 F. Supp. 1185, 1198 (M.D. Pa. 1992). *See e.g., Biggins v. Danberg*, No. 10-732, 2012 WL 37132 (D.Del. Jan. 6, 2012); *Quirindongo v. Federal Bureau of Prisons,* No. 10-1742, 2011 WL 2456624 (M.D. Pa. June 16, 2011). Therefore, in amending this complaint, the plaintiff's amended complaint must recite factual allegations which are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), set forth in averments that are "concise, and direct," Fed. R. Civ. P. 8(e)(1), and stated in separately numbered paragraphs describing the date and time of the events alleged, and identifying wherever possible the participants in the acts about which the plaintiff complains. This complaint must be a new pleading which stands by itself as an adequate complaint without reference to any other pleading already filed. *Young v. Keohane*, 809 F. Supp. 1185, 1198 (M.D. Pa. 1992). The complaint should set forth plaintiff's claims in short, concise and plain statements, and in sequentially numbered paragraphs. It should name proper defendants, specify the offending actions taken by a particular defendant, be signed, and indicate the nature of the relief sought. Further, the claims set forth in the

17

complaint should arise out of the same transaction, occurrence, or series of transactions or occurrences, and they should contain a question of law or fact common to all defendants. The Court further places the plaintiff on notice that failure to comply with this direction may result in the dismissal of this action pursuant to Rule 41 of the Federal Rules of Civil Procedure.

### III.   Recommendation

For the foregoing reasons, IT IS RECOMMENDED that the defendants' motions to dismiss, (Doc. 7.), be GRANTED, but that the dismissal of this action be without prejudice to any effort by the plaintiff to timely allege facts in an amended complaint which might state a claim upon which relief may be granted, provided that the plaintiff acts within 20 days of any dismissal order.

The parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.

The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 21st day of December 2016.

                           **/s/ Martin C. Carlson**
                           Martin C. Carlson
                           United States Magistrate Judge